Burns Affairs, 067060, Mr. Carpenter. Thank you very much, Your Honor. Kenneth Carpenter appearing on behalf of Sharon Youngman. Ms. Youngman is the VA and court-appointed fiduciary for Lee T. Richardson. Mr. Richardson is deceased. Prior to his death, he was awarded a substantial award of benefits, and those benefits were not made to Mr. Richardson or to his VA or court-appointed fiduciary. In order to compel the VA to make— And so benefits due and unpaid go to under, what, 5121 to the spouse, children, or dependent parents? That's not entirely accurate, Your Honor. 5121 does provide a statutory basis for a new adjudicatory proceeding that authorizes a certain class of survivors of the veteran to proceed. This case deals, however, with the circumstance in which, first, there is an award made prior to death and there is a pending petition for extraordinary relief to compel the VA to make those payments, and second, whether or not the action for extraordinary relief can survive the death of the veteran based upon the VA's appointment of a fiduciary. Did 5112 say that benefits terminate on death, and didn't we interpret that in that manner in Seymour, is it? Those benefits terminate on death that are due prospectively. These were an award of retroactive benefits for some considerable period of time that predated both the veteran's death and were not prospective benefits that would be terminated under the Seymour case. In other words, they were due and unpayable. They were previously due and payable. Due and unpaid. Due and unpaid, that's correct. Under 5121. But not under 5121, Your Honor. Is there another statute that deals with— There is not another statute, and that's the facts that this case presents. Is there another means available when, under the facts of this case, you have an appointment made by the VA prior to death for the express purpose of the receipt of those benefits? And that was the purpose of the appointment. Those benefits would have been paid but for the VA's administrative determination that preexisted that decision, that he was not competent to receive those benefits. The VA's interpretation of 5121 in their briefs would permit the VA to essentially be rewarded for having delayed the payment and having successfully defended the writ petition until the time that the veteran died, and therefore they get a free pass not to have to pay benefits. In the case where there are none of the designated survivors. None of the designated survivors. And what this case, what this court's case law in Zebelkink and its protege deal with are the circumstances in which there is a qualifying survivor under 5121. There is— You raise a, you know, there's, you have some compelling sort of, I'll say, equities in your favor, but isn't it really a situation where there has to be a statutory fix? Absolutely not, Your Honor. Because the simple fact that Congress has created a specific mechanism to deal with this for this class of veterans in no way bars the recovery under the circumstance in which there are non-qualifying survivors. There's another case that's pending before this court that's going to address the issue of non-qualifying survivors separately. Simply those people that aren't named in 5121. And this really goes to the question of whether or not the government is able to take advantage of a congressional action which is clearly intended to benefit a specific class of survivors to the exclusion of the heirs at law. Or in this case, the court-appointed fiduciary who essentially acts in the stead of Mr. Richardson and by the receipt of those monies would pay the monies to his estate. But who died without any heirs. Sorry? Does Mr. Richardson have heirs? Yes, he does, Your Honor. And there has been an intestate proceeding filed in the same district court where the curatorship was filed in Wyandotte County, Kansas by the VA to initiate the curator. Are those heirs within the list of 5121? No, they are not, Your Honor. But they are under the Kansas intestate line of succession for heirs at law defined by Kansas statutes for individuals who die without a will. Mr. Richardson did not have a will and therefore his estate would be probated intestate and those individuals are defined by state statute. But the curator is not representing the estate at this point. No. No. The curator, in fact, did file the petition for the intestate proceeding, but one of the heirs at law, a brother who is an attorney, I believe, in Wisconsin or some place up in the Middle Northwest, asked the court since he was a relative to be appointed and the court appointed him as the administrator. So isn't that really the party that should be pursuing this matter? If, in fact, it's for the estate of the veteran? Well, I don't believe so, Your Honor. And I believe it's the government's position the same, whether it's Ms. Youngman as the curator or the administrator. As Judge Shaw was pointing out, they don't qualify under 5121, so King's X, we get to keep the money. No, but wouldn't your position be stronger if, in fact, the representative of the estate was now seeking to receive the benefits which the veteran did not receive because he had passed away prior to receiving those benefits? Mr. Patrick, the administrator, court-appointed administrator for Mr. Richardson, has made written demand on the VA for payment, and the VA has elected not to respond to him to the best of my knowledge. I do not believe under these particular facts that the estate is the appropriate person because there was this VA internal administrative regulatory procedure for the appointment of someone whose entire purpose, function, is to receive benefits because the veteran isn't capable of receiving them. While the veteran was alive? While the veteran was alive. And they could have made those payments prior to death, but they said that we don't want to make those payments prior to death because we want you to post a bond. The bond actually was filed on the same date of the date of death of Mr. Richardson. So it's really not a question of anything other than their own administrative delay in qualifying their person who they had already qualified administratively in May of 2005, and they waited until the additional qualification of the posting of the bond. But, Mr. Carpenter, isn't there really an underlying condition that the veterans remain alive during the curators' period in order to receive the benefits, and the only way that any of those benefits can be received is under 5121, under the congressional scheme of the statutory structure? I don't think so, Your Honor. There is nothing in the statutory scheme that prevented the VA from making these payments prior to death. That's why the original written petition was filed. The original petition was filed because they wouldn't promulgate a written decision. The hearing officer made a decision and said, yes, we're going to give you all these retroactive benefits, but they wouldn't put it in writing. So Mr. Richardson, through me, had to file a petition for extraordinary relief just to get them to print the decision. They actually published the decision two months after it was actually made in May of 2005, and in that decision, two months after the fact, they acknowledged that they had in fact made the decision back in May. Mr. Carpenter, one of the words that hasn't been mentioned is that difficult Latin word, mandamus. Yes. Very high hurdle. You have to have a clear entitlement. Absolutely, Your Honor. You've got an interesting argument. You're sort of pushing it and trying to justify the equities. There isn't a clear entitlement here. I vigorously disagree, Your Honor. There is a clear entitlement. That clear entitlement arose in May of 2005. It was promulgated in July of 2005 when the VA announced the clear entitlement to those benefits. The only prohibition to the payment was qualifying or the additional qualifications of their own appointed fiduciary. That all took place on the same day as death. Now, there is nothing in the statutory scheme that says, as the VA would suggest, that, oh, we get a timeout here because the veteran died the same way that the curator was finally qualified by bond. There simply isn't an escape clause available to the VA, and there's nothing in fairness, justice, or equity that requires the result that the VA has fashioned here. They have essentially said, we get to keep the money. Mr. Carpenter, let me ask you. If, in fact, the VA wasn't involved here, but this was a private hospital where there was some tort claim. Excuse me. I have a little bit of a cold. I'm struggling with the volume on myself. I guess that what would happen is if you had a circumstance where it had been determined that money was due Mr. Richardson, it would be paid as a state.  That's correct, Your Honor. Now, in the VA statutory and regulatory world, are there situations where claims can be lodged by states? Do you know? I'm asking because it seems slightly wrong. I am not aware of any circumstance in which a state is allowed to proceed within the VA system. Yeah, that's what I'm thinking. That is simply an omission of both statute and regulation to address that circumstance. Our position, of course, is that Ms. Youngman fills that gap. She is the transition between the estate's need, as Judge Gallarza suggested, to be the party of interest here, because there is no need because the VA had previously provided prior to death a mechanism for the payment of these benefits to Ms. Youngman. And they simply should be compelled to honor that. And if they are compelled to honor that, then Ms. Youngman takes the money, she reports it to the court, files her accounting, and then goes and transfers it to the administrator of the estate as would have happened had Mr. Richardson not died. I mean, the reality here is that but for Mr. Richardson's death, these monies on the date that she qualified would have been a clear and indisputable right of the curator to have received on behalf of Mr. Richardson. Except that there's a conflict with 521-5121. There's a conflict only to the extent that you have to interpret 521 to also mean there is no authority for a curator to receive and or there is no authority for the estate to receive. That language isn't in the statute. And there's no regulation that interprets the statute that way. But the statute is pretty clear, isn't it? Upon the death of a veteran, the living person first listed below. Veteran spouse, children in equal shares, and dependent parents, period. It doesn't list anybody else. And the way that this court has interpreted that is that that gives rise to a new administrative proceeding for that class of survivors. That's the way this court interpreted in Zevilkink and in Haynes and in a series of other cases in which the spouse wanted to come in and continue to pursue the appeal. But they take directly on the 5121, not through an estate proceeding. That's correct. And that is, to me, a distinguishing factor. There is no reason to exclude the estate from receipt of those monies if the state would have been entitled to it but for, in this case, I believe, the willful withholding of those monies by the VA. They simply didn't want to turn over that large amount of money until there was a qualified bond posted. That qualifying bond posting requirement was met. I see I'm way into my time, and I would like to reserve at least a few moments. Thank you very much, Your Honor. Mr. Duvall. Thank you, Your Honors. Good morning. May it please the Court. There's two principal issues before the Court. The first issue is a matter of standing and whether Ms. Youngman has standing to even pursue this appeal. And the second issue is whether the CAVC properly dismissed his moot. Mr. Richardson's writ of mandamus. Now, in order to establish standing, an individual must demonstrate that he or she has been injured and that they have a personal stake in this litigation. Now, Ms. Youngman cannot demonstrate standing in this case. First of all, she was simply the fiduciary of Mr. Richardson. Therefore, whatever he was entitled to at the time, she would just be there to receive his payment to provide to him as his fiduciary. While he lived. While he lived, exactly. Now, the regulations at Part 13, they spell out specifically what a fiduciary has to do on behalf of a beneficiary. And it's set up, as regimes set up, that principally they just receive the payments, they pass them on to the fiduciary. That's all they do. But she was appointed. She received the letters of curatorship the day he died. Do we know which happened first? Well, it doesn't matter which got there first. For purposes of this case, what really matters is were those funds paid or unpaid? And in this case, they were unpaid. Now, a lot has been made of what the VA made Ms. Youngman do. What if he had died the day after? If he would have, it still wouldn't matter. It all comes down to when they're paid for purposes of 5121. But hadn't she filed a claim before her papers were accepted? She did file an amended writ for mandamus trying to substitute herself for Mr. Richardson. Now, if she'd had the papers properly processed by then, she would have had a proper claim, right, representing him? Correct. Correct. She would have had the ability to receive payment. And his subsequent death, would his subsequent death have vitiated her claim? Yes, to the extent that the claim was still pending if it were in the form of a writ of mandamus. And again, all that she can claim is something that she can get through him. The only way she can receive payment is if he's still alive. And the statutes, particularly 5121, specifically sets forth the system for this exact scenario. If somebody dies and they have funds and benefits that are owed and due to them and they haven't been paid yet, it has to go to a set number of individuals, the spouse, children, dependent parents. Does 5121 override state statutes? In the sense that if this was a corpus that was due to the estate, and under 5121, the only people who could receive the benefit statutorily would be those listed individuals. But under the state statute, the next of kin who are not listed under 5121 could also receive through the estate. Which would override? Well, the federal statute would override. And this is also a statute for benefits. Why is that? Well, because this is a system that's set up for the provision and distribution of benefits in the event of death. Federal benefits. Federal benefits. Correct. And these are federal benefits from the VA. There's a statute that's specific to the state. Now, if there's a state statute that says generally benefits can be distributed this way or that way, that would still be trumped by this statute that speaks to this situation. So if there's a conflict between the two, you're saying that the 5121 statutory scheme would override the state provisions? That's correct. And the only compliance that was done by the VA here for state law was the setting up of this curatorship, which was required by Kansas state law that this actually be set up. And they also requested there be a posting of the bond for the benefit of the veteran, ultimately, to ensure that the funds were actually distributed to the veteran. But that was only during Mr. Richardson's lifetime? That's correct. Does the curatorship terminate under Kansas law upon Mr. Richardson's death? I don't know the answer to that. I do know that the fiduciary relationship terminates upon the death of the veteran from the VA perspective. Mr. Dufault, let me ask you this question. March the 1st, Mr. Richardson is alive. They received the check at the VA office, and they're going to send it to Ms. Youngman. They put the check in the mail the night of March the 1st. First thing, March the 2nd, he dies. Could VA, under those circumstances, put a hold and cancel the payment? No. If the check is in the mail? I mean, it's a little bit of an absurd situation, but you kind of have to get into it to test the parameters. Well, I'm not sure if this is a matter of the mailbox acceptance rule, and they're slipping it in the mail would trigger acceptance. But I think, again, the focus is not necessarily on receipt, but the focus is on whether the funds were paid or unpaid. And I think the act of taking the check, putting it in the mail would trigger the fact that the funds have been paid. What if you have a situation where the check, they call Ms. Youngman and they say the check is at the VA office, and go to Mr. X and he will give you the check? She says, I'll be there tomorrow. That's at 10 o'clock in the morning on March the 1st. And at noon, he dies. If she comes in the next day, will she not be given the check? I think she would be given the check for the same reasons that if it were placed in the mail, that would be considered paid. And if they said, here, come pick up the check, and she gets there eventually shortly after his death, that would still consider it to be paid. I think the cutting of the check itself would constitute payment in this case. That would be our position. Do you know, I asked Mr. Carbonis, do you know of any proceedings that the VA system contemplates where estates are involved? No. And you were also asking him questions, too, regarding whether they have a stronger case if the state were involved here. Somebody did. I didn't ask that, but I think one of my colleagues did. Right. It came up. And, again, the state is going to run into the same problem. It might be an aggrieved party to the extent that it would have benefited from funds. But it has no express right to those funds. And just because there was an indisputable right to the funds at one time, whether that be if you're acting as a fiduciary on behalf of a beneficiary, that indisputable right was extinguished and expired upon Mr. Richardson's death as well. Is that because under 5121, the listed individuals take outside of the estate? That's part of it. And it also dovetails with 5112, which actually describes and sets forth the expiration of a claim for benefits. And that's that once somebody dies, the last day of the month before they die, their claim dies as well. And under 5110D, an accrued benefits claim arises out of that situation on the first day of the month that the veteran died. But back to your question. I'm not sure of any system that's set up for estates to come in. I don't see why they couldn't come in. They're going to run into the same standing issues as we have here if the veteran happens to die before payments are made. And, again, this is a case where the statute specifically addresses this. This is not a unique or unusual case. And this isn't a matter of the VA just being able to hold on to the check and somehow benefiting from this delay in her getting paid. First of all, this is just a matter of months between the time that she tried to petition to become the fiduciary for Mr. Richardson and his death. It came shortly thereafter. All of these events arose between May and August of 2005, so we're not dealing with an unusually protracted amount of time. And also, this also isn't a matter of the VA benefiting somehow from holding on to the check. Congress has specifically spoken on this issue. If a veteran dies, the benefit system is set up for the veteran. If the veteran dies, it's laid out who can actually come in and get anything that has been paid or undue. In this case, there isn't anybody here that we know of, but it's certainly not Ms. Youngman, and that's why she doesn't have standing. And generally, for the same reasons why she doesn't have standing, Mr. Richardson's case was indeed moot in the form of his writ of mandamus that was filed before the CABC. As soon as he died, that claim essentially died as well, and it gave rise to a new claim, the accrued benefits claim. And therefore, the CABC appropriately denied his petition for writ of mandamus as moot. And for those reasons, we request this Court to uphold the decision of the CABC. Thank you, Mr. Cole. Thank you. Mr. Topner has a couple of minutes. Let me ask you just one question here. Would the situation, assume for the example we have, the same time sequence, same series of events, with one exception. Mr. Richardson is not incompetent. He's managing his own affairs. Ms. Youngman isn't in the picture. But everything else that happened is it did. What would be the result? That I believe we would have to go to Judge Garris' point as to the estate stepping in as the party of interest. And that an heir at law under Kansas law would have to come in and ask the Court to substitute them as the party of interest. Right. But I'm thinking about what about before the VA? Would there have been any avenue for relief? Because say Mr. Richardson had been alive. He'd brought his own mandamus petition, et cetera. To compel them to make the payments of the past due benefit award that they'd made. But he died. Right. But there's no curator. Right. And if there is no curator, then there isn't anyone to bring the action under 5121. So the question then becomes under Landiscio at the CAVC whether or not, as the government has just suggested, the petition becomes moot simply because of his death. And Landiscio is based entirely on the relationship to 5121. If there isn't a relationship or there isn't a qualifying survivor under 5121, then why should the writ die? The monies were still due and there ought to be a remedy available at law. He had a clear and indisputable right. The government's reliance on 5112 is not correct because 5112 goes for the payment of regular periodic benefits. These were not regular periodic benefits. These were past due benefits for a total rating back to 1986 that had been unlawfully deprived. It took Mr. Richardson years of litigation to correct the mistake that was made in 1986. It was finally corrected. Then they didn't give him a total rating. Then they finally give him a total rating, and they simply, as North Carolina used to do, run the four corners and run out the clock on Mr. Richardson in order not to pay him. My clock has likewise run out.